UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


UNITED STATES OF AMERICA

-vs-                                                          Case No.: 2:08-cr-56-FtM-99SPC

SHERI REDEKER BARRY
WARREN THOMAS BARRY

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Defendant Sheri Redeker Barry's Motion to Suppress (Doc. #91) filed on January 11, 2009 and Warren Thomas Barry's Motion to Suppress (Doc. #96) filed on January 14, 2009. The Government filed its response in Opposition (Doc. #99) on January 20, 2009. A hearing was held before the undersigned United States Magistrate Judge on January 29, 2009. The Government was represented by Managing Assistant United States Attorney Douglas Molloy. The Defendant Sheri Redeker Barry was present and represented by retained counsel Alan Stuart Richey. *Pro Se* Defendant Warren Thomas Barry was present and assisted by standby counsel Thomas H. Ostrander.

At the hearing, the Government called two witnesses, Constance Hutson (Hutson) and Susan Stonier (Stonier). The Defense called Beth Watts (Agt. Watts). The Government introduced one (1) exhibit entitled "Your Rights as a Taxpayer, Publication 1".

Both Defendants, in identical motions, urge the court to suppress all evidence the Internal Revenue Service ("IRS") obtained through its administrative summons. The Defendants argue the

evidence should be suppressed because the summonses (third-party requests) were never served on them as required under law. They further argue the IRS cannot show that its authority for issuing the summons fits within a statutory provision.

The Government in its Response to Defendants' Motion to Suppress argues the Defendants' Motion is worded to confuse third party contacts and the need for a notice with the issuance of a summons which are two distinctly different matters. The Government argues that Revenue Officers are not required as per Section 7609(c)(D)(I) to give notice if the summons is issued in aid of collection. Further, Revenue Officers may make third-party contacts without a summons.

The Government further argues that as to the allegation on page 3, paragraph 3 of the Defendants' Motion, that the wording again appears to be intended to confuse the reader. The Government argues that under section 7602(d), no administrative summons may be issued if a grand jury investigation or criminal prosecution of the person has been referred to the Department of Justice. In the instant case, the Government asserts that no administrative summonses were issued after IRS Agt. Watts made her request for a grand jury. Until that time, no other referral to the Department of Justice had been made. Further, the referral to the IRS criminal investigation by the IRS Civil Examination and Collection functions does not constitute a Department of Justice referral for purposes of Section 7602(d).

<b><u>TESTIMONY AND EVIDENCE</u></b>

**<u>Revenue Officer Constance Hutson (Tr. 6-67):</u>**

Hutson worked for the IRS for 25 years. (Tr. 6:6-11). She worked in the Fort Myers office for approximately 21 years. (Tr. 6:14-18). During the time she worked for the IRS, she used the

pseudonym Constance Lewis.[1] (Tr. 6:19-23). She worked as a Civil Enforcement Officer, specifically a Revenue Officer. (Tr. 7:6-10). Her duties involved working on an inventory of accounts for individuals or entities that had not filed income tax returns, or individuals or entities that owed taxes and had to have a collection determined. (Tr. 7:11-18).

Her first contact with the case involving the Barrys was when she was assigned Sheri Redeker's account on June 17, 2004.[2] (Tr. 7:19-25, 8:14-15). Her first history entry analysis indicates that the case had been identified on an anti-tax promoter's list who had been injoined and had been ordered by the court to turn over the list of his clients. (Tr. 19:9-13). However, this information did not cause her to handle this case any differently than she did any other case. (Tr. 19:15-19). As part of her duties with the account, she researched internal documents, public records, and made a determination as to the prior history of the taxpayer. (Tr. 8:15-20). In the Redeker case, it was an archival history. (Tr. 8:21). After reviewing the file, she established that she needed to mail a first contact letter. (Tr. 8:24-25, 9:1-2 ). This letter invited the taxpayer to contact her. (Tr. 9:2-3). She also sent a third-party contact letter which is a form letter stating that in the course of the investigation she is authorized and may contact third-parties regarding her investigation of the liabilities or the delinquencies. (Tr. 9:4-8). She also included Publication 1, "Your Rights as a Taxpayer" in the correspondence. (Tr. 9:9-14) (Govt. Ex. 1).

---

[1]Using a pseudonym is approved by the Internal Revenue Office to assist their employees in protecting themselves and their assets from individuals that may choose to attack them based upon the type of work they do. (Tr. 6:24-25, 7:1-5).

[2]Throughout the hearing, Ms. Hutson referred to Sheri Redeker Barry's account as the Redeker account as opposed to Mr. Barry's account which she referred to as the Barry account. For clarity throughout this Report and Recommendation, the Court will use the same references.

On July 26, 2004, she received correspondence from Redeker. Hutson indicates the response espoused frivolous arguments as far as the legality of taxes.[3] (Tr. 10:14-21). Based upon reviewing the tax mod, or computer system of historical entries, she generated a form letter, L 3175, and provided a publication which basically stated, "we've received your correspondence, your arguments are unfounded, and the service will no longer respond to these unfounded arguments." (Tr. 11:4-13). She also took the time to advise Redeker that her representative, Brian Malatesta, had been injoined and prepared the appropriate letter indicating he was not authorized to represent her. (Tr. 11:14-17). She forwarded Redeker a blank power of attorney form to fill out and send back if she chose to be represented by someone else.(Tr. 11:17-19).

Hutson did not receive a response from Redeker, therefore, Hutson determined she was going to have to contact Redeker. (Tr. 11:23-25, 12:1-3). She made a field call to Redeker's residence and served a summons for all information to establish the collectibility of Redeker's existing liabilities. (Tr. 12:3-5). This summons is called a collection information statement summons. (Tr. 12:5-7). As a result of the summons, Redeker appeared for the interview on September 8, 2004. (Tr. 24:7-9) Although Redeker answered some questions, she refused to answer any questions regarding income and bank records. (Tr. 12:22-25, 13:1-5).

Hutson learned from the interview that Redeker was renting a property at Coral Kay. (Tr. 29:21-22, 30:3-4). On September 14, 2004, she checked Lee County Property Appraiser and established that Steven Redeker, Redeker's son, was the owner of that property. (Tr. 29:22-24). Based upon learning the son owned the property Redeker was living in, she then went on to try and

---

[3]Hutson defined frivolous arguments as "arguments which have already been tried in courts throughout the land and the courts consistently have upheld the Government's position." (Tr. 20:7-21).

establish whether the son had the wherewithal to buy the property. (Tr. 30:14-17). If it was not possible to establish that, then she would consider a nominee, a situation whereby the asset is held for Redeker in the name of someone else. (Tr. 30:17-21).

Hutson could have chosen to enforce the summons on Redeker based upon their meeting, however, because Redeker answered some questions, she chose not to enforce the summons but rather to move forward to try and identify assets that she could use to address collection issues. (Tr. 13:10-15). She began by making a third-party contact, specifically, contact with Redeker's employer. (Tr. 13:17-18). She summonsed information from Redeker's employer and then title information for two properties that Redeker had lived in. (Tr. 13:18-21). Redeker was not notified of these summonses because the "Internal Revenue Code states that a taxpayer is not entitled to receive a copy of a summons or is not afforded quash rights when a summons is issued by collection in order to investigate an already existing assessment." (Tr. 13:23-25, 14:1-5). This was the case with Redeker. (Tr. 14:5).

Hutson issued approximately ten (10) summonses. (Tr. 32:1-14). She does not believe that she made third-party contact with anyone she did not summons.[4] (Tr. 32:19-25, 33:1). As a result of one of the summons, Hutson received information from AmSouth. (Tr. 52:1-3).

On September 29, 2004, Hutson made contact with Revenue Agent Susan Stonier. (Tr. 34:14-18). She spoke with Stonier at length about the investigation. (Tr. 34:19-21). She discussed with her information that she discovered which would be helpful in establishing correct tax liability for the years that had not been filed by Redeker. (Tr. 34:21-25).

---

[4] A third party contact entails making contact with a third party, identifying her title with the IRS, identifying who she is calling about, and asking for information. The third party can provide the information or refuse. This can be done in person or by phone. (Tr. 33:19-25, 34:1-4).

Regarding Warren Thomas Barry, on March 15, 2005, Hutson sent Barry form letter 3175. (Tr. 41:23-25, 42:1-11). Barry's correspondence had cited Sixteenth Amendment protections as well as what Hutson determined to be frivolous arguments. (Tr. 42:1-5). On March 31, 2005, it was established that she would work Barry's file in conjunction with taxpayer's spouse, Redeker. (Tr. 38:8-10). At that time, Hutson noted three potential badges of fraud: nominees, the non-filing of returns yet having the assets to pay, and frivolous arguments. (Tr. 38:24-25, 39:1-6). On that day, she met with Revenue Agent Stonier again. (Tr. 42:23-25). As a result of the meeting, she was advised by her group manager to contact the fraud technical advisor, a civil employee, to continue the investigation of the case as appropriate. (Tr. 43:6-11).

On April 1, 2005, Hutson had established that there were potential badges of fraud and went to her fraud technical advisor who is also a civil advisor. (Tr. 36:1-4). She continued her investigation through the month of May and was out the months of July and August for training. (Tr. 52:5-8). On April 8, 2005, Hutson prepared form 11661[5] and forwarded it to her manager for approval to be forwarded to the fraud revenue agent. (Tr. 47:1-7). Basically what she was saying was, "this is what I have, is this fraud, and should we put together a formal referral to criminal investigation." (Tr. 44:5-7).

On September 1, 2005, Hutson began to review and assemble the case file to prepare documents which summarize the documents she had received. (Tr. 52:11-15). On September 15, 2005, her history contained an entry which indicates that she was going to discuss what she had with the fraud technical advisor and proceed with it as appropriate. (Tr. 52:23-25). Her entry also

---

[5]Form 11661 is a request for fraud technical assistance. It is a fraud development status form, not a referral. (Tr. 43:18-19).

indicates that if badges of fraud can be shown, further research would not be necessary. (Tr. 53:14-15). If the indications of fraud require further investigation, she would issue summons to lenders, title companies, and utility companies. (Tr. 53:16-18). On September 7, 2005, her history indicates that she met with the revenue agent and it was agreed that they would each speak with their fraud technical advisor and have a joint conversation before proceeding. (Tr. 53:22-25, 54:1-4, 10-15).

On October 11, 2005, Hutson spoke with AmSouth since she had not received their response to her contact. (Tr. 55:9-13). Although they had not completed compiling all of the information requested, Hutson indicated to them they should overnight any materials they had since she knew she had a meeting the next day and wanted to have as much information as she could. (Tr. 55:14-25, 56:1-22). On October 12, 2005, Hutson met with the revenue agent, both general managers, and both fraud technical advisors. (Tr. 57:6-7). The fraud technical advisor indicated there were sufficient badges of fraud to warrant a formal referral to criminal investigation. (Tr. 57:6-12). At that meeting it was determined that she would not pursue any further third-party contacts but would prepare a referral to criminal investigations. (Tr. 57:9-12). On November 22, 2005, she completed her narrative for the formal criminal referral. (Tr. 57:22-24).

A fraud referral was made on December 5, 2005. (Tr. 15:16-17). Prior to that time she had completed form 2797, which is the actual fraud referral form. (Tr. 15:17-18). The technical advisor had received it, established that it indeed had sufficient badges of fraud to warrant criminal investigation, and the formal referral was forwarded to the group manager for referral. (Tr. 15:18-22). During the time that she was working on the case prior to December of 2005, she did not have any contact with Agt. Watts. (Tr. 16:20-23). In fact, she did not meet Agt. Watts until February of

2006. (Tr. 17:17-19). After the criminal referral, she took no further action on the case. (Tr. 15:23-24). She did not issue any summonses. (Tr. 15:23-24).

**Revenue Agent Susan Stonier (Tr. 68-125):**

Stonier is a revenue agent with the Internal Revenue Service.[6] (Tr. 68:4-6). She first became aware of Sheri Redeker Barry when she was assigned her case file in September of 2004. (Tr. 68:22-25, 69:1-3). She actually received the file after another agent who had not had time to work on the case. (Tr. 69:12-14). There was a note attached to the file that indicated R.O. Lewis (Hutson) had been working on the collection part of the case. (Tr. 69:14-15). She reviewed the file and contacted Hutson. (Tr. 69:16-19). She performed a pre-audit analysis which she used to determine whether or not returns had been filed since the point the case was actually assigned to her. (Tr. 69:22-24). She did a background check to determine income that might be on their databases, and checked public records and other sources of data to see what she could glean from that information. (Tr. 69:24-25, 70:1-3). On September 29, 2004, she met with Hutson regarding Redeker's case. (Tr. 76:5-9).

On October 7, 2004, she sent an appointment letter to Redeker and received a letter in response on October 22, 2004. (Tr. 70:20-22). In her response, Redeker indicated that she did not plan on keeping the appointment. (Tr. 70:25, 71:1). Therefore, on December 13, 2004, she summoned Redeker to appear. (Tr. 70:25, 71:1). The purpose of the meeting was to determine whether Redeker was required to file tax returns and also to see if she was going to willingly provide information to determine income and expenses to help her file those returns. (Tr. 71:6-10). Redeker

---

[6]As a revenue agent she determines whether a return is filed, whether it's technically correct, and if a return is not filed yet is required, she would file the return.

appeared in January for the summons, but declined to provide information. (Tr. 71:12-15). She informed Stonier that she had no intention of filing returns and that Stonier should file them for her if that is what was required of her to do. (Tr. 71:12-15). Redeker was informed during the January meeting that Stonier would be making third-party contacts. (Tr. 71:24-25, 111:20-25). That is the only notice Redeker received from her regarding that matter. (Tr. 111:22-25).

Stonier first issued third-party letters on February 28, 2005.[7] (Tr. 82:7-10, 83:11-12). Redeker was not advised of any third-party contact. (Tr. 93:19-25). She also issued summonses to obtain information. (Tr. 97:18-21). On March 31, 2005, Stonier attended a meeting with Hutson and others regarding the Defendant's case. (Tr. 90: 6-9, 91:24-25, 92:1-2, 134:1-5). On May 2, 2005, she issued a summons to AmSouth bank requesting all records from 2000 to 2004. (Tr. 94:8-10). She received those records on June 15, 2005. (Tr. 96:2-4). On May 4, 2005, Redeker sent her a letter requesting the third-party contact list. (Tr. 84:9-13). Stonier continued to do research on the case. (Tr. 104:11 ). On August 10, Stonier had another meeting and discussed referring the matter to a fraud technical advisor. (Tr. 106: 17-20). She met again to discuss getting a fraud technical advisor involved on August 22 and 23, 2005. (107:2-4). Stonier followed up the meeting by referring the matter to a fraud technical advisor on August 31, 2005. (Tr. 107:5-7, 110:4-20). Stonier testified that at that point the referral was still civil. (Tr. 110:7-23). On September 28 and October 12, 2005, there were also meetings. (Tr. 108: 6-12). After the October 12, 2005, meeting, it was decided that she would continue to develop her expense portion of her examination and continue to review the bank statements. (Tr. 108:13-15, 114:4-8). Throughout October, she continued to review

---

[7]A third-party letter is a friendly summons which asks for information. A summons is, therefore, not needed to get the information. (Tr. 82:13-17).

the file and make contacts. (Tr. ). On October 27, 2005, she was still working on a civil referral. (Tr. 109:17-21). Throughout November she was still receiving and reviewing information. (Tr. 112:1-12). The file was referred for criminal fraud in December of 2005. (Tr. 110:21-25, 113:3-4). She did not issue any summonses or do any continuing investigation after that time. (Tr. 72:2-8).

**Agent Beth Watts (Tr. 126-131):**

Agt. Watts was the special agent assigned to the Defendants' fraud case. (Tr. 126:14-15). Agt. Watts received the case on January 24, 2006. (Tr. 126:16-17). She interviewed Hutson and Stonier after the case was referred for criminal investigation. (Tr. 126:24-25, 127:1-5). Agt. Watts made a written report of the interview with Stonier. (Tr. 127:6-24). Defense Counsel called Agt. Watts to testify regarding certain statements relied on by Stonier in the written report of the interview between Agt. Watts and Stonier. (Tr. 125:2-21).

The Defendants specifically noted that Stonier told Agt. Watts that fraud may be involved in the Defendant's case, so Stonier would not submit her report to the Defendants. (Tr. 128:15-25, 129: 2-5). Instead, Stonier told Agt. Watts that a fraud referral form would have to be filled out and submitted for the Defendants. (Tr. 129: 6-20). Agt. Watts testified that Stonier's fraud referral form was submitted to her fraud coordinator on August 10, 2005. (Tr. 129: 21-25, 130:1-9).

## DISCUSSION

The Defendants' Motions are duplicative, and therefore, the Court will treat them as one in its analysis of the issues. The Defendants argue the IRS revenue officers acted illegally and in bad faith by issuing third-party summonses without notifying the Defendants prior to the summonses being served. The Defendants further claim that when a criminal referral is pending, no

administrative summonses can be issued. The Government responds that the Revenue Officers complied with the law and properly issued all summonses in this case.

*(1) Whether Notice was Required in the Summonses Issued by the IRS*

In this instance, the Defendants object to the summonses issued by Hutson and Stonier. A summons served on a third-party to obtain information regarding tax liability is governed by 26 U.S.C. § 7609. Caton v. U.S., 2007 WL 1549434 *2 (M.D. Fla. May 25, 2007). The Statute reads in pertinent part:

> (a) Notice.--
> (1) In general.--If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

26 U.S.C. § 7906(a). Under this provision, a taxpayer is given certain rights to notice and to quash the summons. Caton, 2007 WL 1549434 *2 (citing 26 U.S.C. § 7609(a)(1) and (b)(2)). The statute provides limitations on the ability of the person whose records are subject to the summons to quash the summons. Caton, 2007 WL 1549434 *2. Specifically, 26 U.S.C. § 7609(c)(2)(D), precludes an individual from quashing a summons which is issued in aid of collection of an assessment. Caton, 2007 WL 1549434 *2 (citing 26 U.S.C. § 7609(c)(2)(D)(i)).

### (a) Summonses Issued by Revenue Officer Hutson

Hutson issued approximately ten (10) summonses. (Tr. 32:1-14). She does not believe that she made third-party contact with anyone she did not summons. (Tr. 32:19-25, 33:1). Hutson testified that she began by making a third-party contact, specifically, contact with Redeker's employer. (Tr. 13:17-18). She summonsed information from Redeker's employer and then title information for two properties that Redeker had lived in. (Tr. 13:18-21). Redeker was not notified of these summonses because the "Internal Revenue Code states that a taxpayer is not entitled to receive a copy of a summons or is not afforded quash rights when a summons is issued by collection in order to investigate an already existing assessment." (Tr. 13:23-25, 14;1-5). Hutson also obtained information regarding the Defendants' accounts, specifically Redeker's accounts at AmSouth bank. (Tr. 52:1-3).

The Defendants state that all information garnered from Hutson's summonses should be suppressed because she failed to issue the Defendants notice of the summonses. However, Hutson testified that she issued her summonses in an effort to collect a previous assessment. (Tr. 13:23-25, 14;1-5).

Hutson's actions comply with the exceptions delineated in the Statute. The Statute states "[t]his section shall not apply to any summons. . . issued in aid of the collection of an assessment made or judgment rendered against the person with respect to whose liability the summons is issued." 26 U.S.C.A. § 7609(c)(2)(D)(i). Since Hutson issued her summonses in aid of the collection of an assessment against the Defendants, there are no grounds to suppress the evidence obtained through those summonses.

### (b) Third-Party Contacts by Revenue Agent Stonier

The Defendants also move to suppress the information gathered by Stonier arguing that Stonier issued summonses and made third-party contacts without giving proper notice. The Government argues that Stonier did not need to give notice because her third-party contacts were informal.

On December 13, 2004, Stonier summoned Redeker to appear. (Tr. 70:25, 71:1). The purpose of the meeting was to determine whether Redeker was required to file tax returns and also to see if she was going to willingly provide information to determine income and expenses to help her file those returns. (Tr. 71:6-10). Redeker appeared in January for the summons but declined to provide information. (Tr. 71:12-15). She informed Stonier that she had no intention of filing returns and that Stonier should file them for her if that is what was required of her to do. (Tr. 71:12-15). Redeker was informed during the January meeting that Stonier would be making third-party contacts. (Tr. 71:24-25, 111:20-25). Stonier first issued third-party letters on February 28, 2005. (Tr. 82:7-10, 83:11-12). Stonier defined a third−party letter as a friendly summons which asks for information. (Tr. 82:13-17). A summons is, therefore, not needed to get the information. (Tr. 83:2). Redeker was not advised of any third-party contact. (Tr. 93:19-25). Stonier also issued summonses to obtain information. (Tr. 97:18-27). On May 2, 2005, she issued a summons to AmSouth Bank requesting all records from 2000 to 2004. (Tr. 94:8-10).

Regarding the summons to AmSouth Bank, the Court has already ruled that Stonier complied with the notice requirements of § 7609. *See* Redeker-Barry v. U.S., 2008 WL 859009 * 5 (M.D. Fla. January 18, 2008) (holding that the Government met its burden and that Stonier provided notice as required by the statute). Thus, the summons issued by Stonier did not violate the statute.

Stonier also sent informal letters making third-party contacts. (Tr. 82:7-10, 83:9-12). Informal contacts are not considered an official summons, and therefore, no notice was required. (Tr. 82:18-20). As a result, the information gathered by Stonier should not be suppressed.

*(2) Whether a Criminal Referral was Pending Preventing an Administrative Summons*

The IRS's authority to investigate is broad and expansive. La Mura v. U.S., 765 F. 2d 974, 979 (11th Cir. 1985). "Prior to 1982, the IRS could not issue a summons solely to gather information for a criminal prosecution against the taxpayer." Id. at 980, n. 9 (citing U.S. v. LaSalle National Bank, 437 U.S. 298, 98 S. Ct. 2357, 57 L. Ed.2d 221 (1978)). In 1982, Congress amended the tax code to "provide a clear definition of when a tax investigation has become solely criminal in nature," which is found in 26 U.S.C. § 7602. It provides that the IRS may not issue an administrative summons if "there is Justice Department referral." 26 U.S.C. § 7602(d). 26 U.S.C. § 7602(d) provides as follows:

> (d) No administrative summons when there is Justice Department referral.-
>
> (1) Limitation of authority-No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.
>
> (2) Justice Department referral in effect.-For purposes of this subsection-
>
> (A) In general.-A Justice Department referral is in effect with respect to any person if-
>
> (i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, or
>
> (ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

On October 12, 2005, Hutson met with the revenue agent, both general managers, and both fraud technical advisors. (Tr. 57:6-7). The fraud technical advisor indicated there were sufficient badges of fraud to warrant a formal referral to criminal investigation. (Tr. 57:6-12). At that meeting, it was determined that she would not pursue any further third-party contacts but would prepare a referral for criminal investigation. (Tr. 57:9-12). On November 22, 2005, Hutson completed her narrative to the formal criminal referral. (Tr. 57:22-24). The matter was subsequently referred to the Department of Justice for a criminal investigation in December of 2005. (Tr. 15:16-17). Thus, the IRS did not issue any administrative summonses in violation of 26 U.S.C. § 7602(d). Neither Hutson nor Stonier issued any summonses after the case was referred to the Department of Justice for a possible criminal investigation in December 2005. (Tr. 15:23-24, 72:2-8).

The Defendants also argue that even if the IRS agents did not issue the summonses in violation of the statute, they acted in bad faith because they knew on March 31, 2005, that they intended to issue a criminal referral. As grounds for their claims the Defendants argue that Hutson and Stonier met with Agt. Watts to discuss criminal referrals.

Stonier and Hutson met in March of 2005 and again on several occasions in August of 2005. Both Stonier and Hutson continued to research the matter and look into the Defendants' financial dealings. (Tr. 104:11). Stonier testified that on September 28 and October 12, 2005, there were also additional meetings. (Tr. 108:6-12). After the October 12, 2005, meeting, it was decided that she would continue to develop her expense portion of her examination and continue to review the bank statements. (Tr. 108:13-15, 114:4-8). Throughout October, Stonier continued to review the file and make contacts. On October 27, 2005, she was still working on a civil referral. (Tr.109:17-21).

Likewise Hutson testified that she met with the revenue agent, both general managers, and both fraud technical advisors on October 12, 2005. The fraud technical advisor indicated there were sufficient badges of fraud to warrant a formal referral to criminal investigation. (Tr.57:6-12). At that meeting it was determined that Hutson would not pursue any further third-party contacts but would prepare a referral to criminal investigations. (Tr. 57:9-12). On November 22, 2005, she completed her narrative for the formal criminal referral. (Tr. 57:22-24).

A fraud referral was made on December 5, 2005. (Tr. 15:16-17). Prior to that time Hutson had completed form 2797, which is the actual fraud referral form. (Tr. 15:17-18). The technical advisor received it, established that it indeed had sufficient badges of fraud to warrant criminal investigation, and the formal referral was forwarded to the group manager for referral. (Tr.15:18-22). During the time that she was working on the case prior to December of 2005, Hutson did not have any contact with Agt. Watts. (Tr. 16:20-23). In fact, she did not meet Agt. Watts until February of 2006, after the criminal referral. (Tr. 17:17-19). Hutson testified that after that she took no further action on the case and issued no further summonses. (Tr.15:23-24).

IRS officers and agents have broad authority to investigate. 26 U.S.C. § 7602. Both Hutson and Stonier testified that there were sufficient potential badges of fraud to continue to investigate the Defendants. (Tr. 38:24-25, 39:1-6). It is clear from the testimony that neither Hutson nor Stonier were investigating the Defendants in bad faith but pursued their investigations based upon the potential badges of fraud uncovered by their investigations. The mere fact that they met on several occasions does not indicate a bad faith conspiracy as suggested by the Defendants, but instead demonstrates a logical progression of both investigations into the same or similar matter involving the Defendants. No summonses were issued by Hutson or Stonier after the criminal referral was

made in December 2005. Thus, the Court respectfully recommends that neither Hutson nor Stonier investigated the Defendants in bad faith.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

(1) The Defendant Sheri Redeker Barry's Motion to Suppress (Doc. #91) should be **DENIED**.

(2) The Defendant Warren Thomas Barry's Motion to Suppress (Doc. #96) should be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Fort Myers, Florida, this  18th  day of February, 2009.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record